SHAMEEK J. HALLS
REG. NO. 26515-052
FCI [redacted] Ray Brook
FEDERAL CORR. INSTITUTION
P.O. BOX [redacted] 900 Ray Brook NY 12977
[redacted], [redacted] [redacted]

April 29, 2026

Mr. John M. Domurad
Clerk of Court
U. S. District Court
Northern District of New York
Syracuse Division
P.O. Box 7367
Syracuse, NY 13261

RE: *Halls v. United States*
Civil No. 3:26-cv-__________
Crim. No. 3:20-cr-00077-TJM-1

Dear Mr. Domurad:

Enclosed please find and accept for filing Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Memorandum of Law in Support thereof. Please submit these documents to the Court.

Thank you for your assistance in this matter.

Sincerely,

______________________________
SHAMEEK J. HALLS
Appearing *Pro Se*

*Encl. as noted*

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

| | |
|---|---|
| **United States District Court** | District Northern District of New York (Syracuse) |
| Name *(under which you were convicted)*: Shameek J. Halls | Docket or Case No.: 3:20-cr-00077-TJM-1 |
| Place of Confinement: FCI [redacted] Ray Brook | Prisoner No.: 26515-052 |
| UNITED STATES OF AMERICA | V. Movant *(include name under which convicted)* SHAMEEK J. HALLS |

**MOTION**

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   United States District Court
   Northern District of New York
   Syracuse Division

   (b) Criminal docket or case number (if you know): 3:20-cr-00077-TJM-1

2. (a) Date of the judgment of conviction (if you know): 2/9/2022

   (b) Date of sentencing: 2/9/2022

3. Length of sentence: 240 Months

4. Nature of crime (all counts):

   Counts 1-20: Distribution and Possession with Intent to Distribute Heroin, Fentanyl, and Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).
   Count 21: Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).
   Count 22: Possession of Firearms in Furtherance of Drug Trafficking Crime, in violation of 18 U.S.C. § 924 (c)(1)(A)(i).

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐ (2) Guilty ☑ (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

   Guilty on Counts 1, 9, 19, 21, and 22 of the Indictment

6. If you went to trial, what kind of trial did you have? (Check one) Jury ☐ Judge only ☑

7. Did you testify at a pretrial hearing, trial, or post-trial hearing? Yes ☐ No ☑

8. Did you appeal from the judgment of conviction? Yes ☐ No ☑

9. If you did appeal, answer the following:

(a) Name of court: United States Court of Appeals for the Second Circuit

(b) Docket or case number (if you know): USCA No. 22-360

(c) Result: Affirmed in part and vacated and remanded in part.

(d) Date of result (if you know): 10/1/2025

(e) Citation to the case (if you know):

(f) Grounds raised:

Halls argued that (1) the district court erred in accepting his guilty plea because it did not comply with certain requirements under Federal Rule of Criminal Procedure 11, (2) the government breached the plea agreement, and (3) the district court erred in imposing two discretionary conditions of supervised release in the written judgment that it did not orally pronounce at sentencing.

(g) Did you file a petition for certiorari in the United States Supreme Court? Yes ☑ No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know): U.S. Supreme Court Docket No. 25-6960

(2) Result: Pending

(3) Date of result (if you know):

(4) Citation to the case (if you know):

(5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

Yes ☐ No ☑

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐ No ☐

(7) Result: ______

(8) Date of result (if you know): ______

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: ______

(2) Docket of case number (if you know): ______

(3) Date of filing (if you know): ______

(4) Nature of the proceeding: ______

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐ No ☐

(7) Result: ______

(8) Date of result (if you know): ______

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition: Yes ☐ No ☐

(2) Second petition: Yes ☐ No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** Ineffective Assistance of Pretrial Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Pretrial Counsel's Failure To:

(1) Conduct An Adequate and Independent Pretrial Investigation; and
(2) Attempt to Negotiate A Favorable Plea Agreement Deprived Halls of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.

Please See Memorandum of Law in Support.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐ No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:** Ineffective Assistance of Sentencing Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Sentencing Counsel's Failure To:

(1) Correctly Discuss and Explain the PSR with Halls Prior to the Sentencing Hearing;
(2) File Substantive Objections to the PSR; and
(3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable Deprived Halls of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.

Please see Memorandum of Law in Support.

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ______

Name and location of the court where the motion or petition was filed:

______

Docket or case number (if you know): ______

Date of the court's decision: ______

Result (attach a copy of the court's opinion or order, if available):

______

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐ No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

______

Docket or case number (if you know): ______

Date of the court's decision: ______

Result (attach a copy of the court's opinion or order, if available):

______

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:** Ineffective Assistance of Appellate Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Appellate Counsel's Failure to Conduct an Independent Review or Advocate on the Merits, Instead Simply Filing an Anders Brief Claiming No Non-Frivolous Issues.

See Memorandum of Law in Support.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ______

Name and location of the court where the motion or petition was filed:

______

Docket or case number (if you know): ______

Date of the court's decision: ______

Result (attach a copy of the court's opinion or order, if available):

______

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐ No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

______

Docket or case number (if you know): ______

Date of the court's decision: ______

Result (attach a copy of the court's opinion or order, if available):

______

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** N/A

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

N/A

(b) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☐

(2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐ No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the you are challenging? Yes ☐ No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:
Francis Paul Battisti, Battisti Law Offices, P.C., 15 Hawley Street, 3rd Floor, Binghamton, NY 13901

(b) At the arraignment and plea:
Francis Paul Battisti, Battisti Law Offices, P.C., 15 Hawley Street, 3rd Floor, Binghamton, NY 13901

(c) At the trial:
N/A

(d) At sentencing:
Francis Paul Battisti, Battisti Law Offices, P.C., 15 Hawley Street, 3rd Floor, Binghamton, NY 13901

(e) On appeal:
Michael P. Robotti, Esq., Ballard Spahr LLP, 19th Floor, 1675 Broadway, New York, NY 10019

(f) In any post-conviction proceeding:
N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:
N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time? Yes ☐ No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? Yes ☐ No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future? Yes ☐ No ☑

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

N/A

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, Halls respectfully requests that the Court grant the following relief:

Vacate his conviction and sentence to start anew; alternatively, grant an Evidentiary hearing to further prove his grounds set forth above, resolve facts in dispute, expand an incomplete record or any other relief to which this Court deems that he may be entitled.

Respectfully submitted,

Shamee Halls

SHAMEEK J. HALLS
REG. NO. 26515-052
FCI LEWISBURG
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
LEWISBURG, PA 17837
Appearing *Pro Se*

**DECLARATION OF SHAMEEK J. HALLS**

I, Shameek J. Halls, declarant herein, declare and attest to the facts in the above and foregoing Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746. I placed this § 2255 Motion in the prison mailbox on the date below invoking the prison mailbox rule. See *Houston v. Lack*, 487 U.S. 266, 270 (1988).

Dated: April ___, 2026

Shameek Halls
SHAMEEK J. HALLS

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAY - 6 2026
AT ____ O'CLOCK ______
John M. Domurad, Clerk - Syracuse

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**********************************

SHAMEEK J. HALLS,

Movant,

-v.-

UNITED STATES OF AMERICA,

Respondent.

Civil No. 3:26-cv-___________
Crim No. 3:20-cr-00077-TJM-1

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

**********************************

COMES Movant, SHAMEEK J. HALLS ("Halls"), appearing *pro se*, and in support of this motion would show as follows:

## I. JURISDICTION

Halls is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562 (1994).

## II. STATEMENT OF THE GROUNDS FOR RELIEF

A. Whether pretrial counsel's failure to: (1) Conduct An Adequate and Independent Pretrial Investigation; and (2) Attempt to Negotiate A Favorable Plea Agreement Deprived Halls of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.

B. Whether sentencing counsel's failure to: (1) Correctly Discuss and Explain the PSR with Halls Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; (3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable Deprived Halls of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.

C. Whether appellate counsel's failure to: Conduct an independent review or advocate on the merits, instead simply filing an *Anders* Brief claiming no non-frivolous issues.

## III. STATEMENT OF THE CASE

### A. Procedural Background

On March 2, 2020, a federal grand jury sitting in the Northern District of New York, Syracuse Division, returned a twenty-two (22) count federal Indictment

charging Halls. See Doc. 10.[1] Counts 1 through 20 charged Halls with Distribution and Possession with Intent to Distribute Heroin, Fentanyl, and Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.* Count 21 charged Halls with Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *Id.* Count 22 charged Halls with Possession of Firearms in Furtherance of Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *Id.* The Indictment also contained Forfeiture Allegations, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p). *Id.*

On July 7, 2021, a Change of Plea Hearing was held and Halls plead guilty to Counts 1, 9, 19, 21, and 22 of the Indictment pursuant to a Written Plea Agreement. See Doc. 33.

On February 9, 2022, Halls was sentenced to a total term of 240 months' imprisonment, 5 years Supervised Release, no Restitution, Fine was waived, and a Mandatory Special Assessment Fee of $500. See Docs. 54, 58.

On February 22, 2022, Halls filed a Notice of Appeal. See Doc. 56.

On May 27, 2022, Halls filed *pro se* request to Dismiss Counsel of Record so that he may proceed with his appeal in this case. See Doc. 66. It was relayed to him

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Northern District of New York, Syracuse Division in Criminal No. 3:20-cr-00077-TJM-1, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

by the clerks that he would need to file a *pro se* motion to have counsel of record dismissed from his case and or have his counsel file a motion to withdraw. *Id.* On September 15, 2022, a Motion to Withdraw as Attorney was filed by Francis Paul Battisti ("Battisti"), which was granted on September 19, 2022. See Docs. 67, 68.

**B. Statement of the Facts**

1. Offense Conduct

> Between October 25, 2018 through November 12, 2019, in the Northern District of New York, the defendant knowingly and intentionally distributed and possessed with intent to distribute heroin, fentanyl, and cocaine base.
>
> On November 14, 2019, Halls possessed in the kitchen of his residence on Lower Creek Road in Ithaca, NY, a digital scale, packaging material and cutting agents to aid him in his distribution of controlled substances.
>
> Halls also possessed at his residence on Lower Creek Road a black AR-15 "ghost gun" located in an open suitcase on the floor of a bedroom closet, in close proximity to the kitchen. The defendant also possessed two boxes of 223 ammunition for the AR-15, located within a few feet of the AR-15 in the same bedroom closet. Halls admits that he possessed the AR-15 and ammunition in furtherance of his drug trafficking activities. Specifically, Halls possessed the AR-15 to protect himself from rival drug dealers or others who might steal the controlled substances and/or the money the defendant made from selling controlled substances.
>
> In a "stash house" on Clinton Street in Binghamton, NY, which Halls used for the storage and distribution of controlled substances, he possessed a digital scale and packaging material to aid him in his distribution of controlled substances.

> Additionally, Halls possessed two firearms, a loaded Ruger LCP .380, serial number 371959080, a loaded Polymer 80 Inc. .40, model number PF940SC (a "ghost gun"), and .9 mm ammunition at his Clinton Street "stash house." He admits that he possessed those firearms in furtherance of his drug trafficking activities. Specifically, Halls possessed those firearms to protect himself from rival drug dealers or others who might steal the controlled substances and/or the money he made from selling controlled substances.
> On the same day, November 14, 2019, Halls possessed approximately one ounce of fentanyl in his pants pocket. He intended to distribute the fentanyl to others. Halls also possessed $1,250 in drug proceeds.
>
> Halls further admits that he personally obtained at least $630 in unrecovered proceeds in connection with the offenses of conviction. He also admits that on or about October 22, 2019, he possessed a Taurus G2C, 9 millimeter handgun, Serial No. TLY11813, in a vehicle used by Halls.

See Doc. 33 at 5-7.

2. Plea Proceeding

On July 7, 2021, a Change of Plea Hearing was held before Senior Judge Thomas J. McAvoy. No Doc. Entry. Halls plead guilty to Counts 1, 9, 19, 21 and 22 of the Indictment. In exchange of his guilty plea, the government recommended a 3-level downward adjustment pursuant to USSG § 3E1.1(a) and (b) for the acceptance of responsibility and the remaining charges will be dismissed. See Doc. 33.

3. Presentence Report Calculations and Recommendations

On January 6, 2022, the PSR was prepared by the U. S. Probation Department and revised on January 28, 2022. Counts 1, 9, 19, and 21 were grouped together as

"Count Group 1" for purposes of the Guidelines calculation. See PSR ¶ 27. Count Group 1 calls for a base offense level of 30 because the PSR applied the drug weight "of at least 1,000 kilograms but less than 3,000" that was stipulated in the Plea Agreement pursuant to USSG §§ 3D1.3(b), 3D1.2(d), 2D1.1(a)(5), and (c)(5). See PSR ¶ 28. Halls received: (a) 2-level increase because Halls made a credible threat to use violence pursuant to USSG § 2D1.1(b)(2); (b) 2-level increase for maintaining a premises for the purpose of manufacturing or distributing a controlled substance pursuant to USSG § 2D1.1(b)(12); and (c) 2-level increase for role enhancement pursuant to USSG § 3B1.1(c). See PSR ¶¶ 29–30, 32. Halls received a 3-level reduction for his acceptance of responsibility pursuant to USSG §§ 3E1.1(a) and (b). The PSR calculated Halls' Total Offense Level to be 33. See PSR ¶ 38. It further calculated a criminal history score of five, resulting in a criminal history category of III. See PSR ¶ 48. The calculation yielded a range of 168 to 210 months' imprisonment. See PSR ¶ 69. The term of imprisonment for 18 U.S.C. § 924(c)(1)(A)(i), which carries a minimum of five years (sixty months) to run consecutively with any other terms, is not included in the Guidelines range. When added to the above Guidelines calculation, that consecutive sentence resulted in a total Guidelines range of 228 to 270 months' imprisonment. See PSR ¶¶ 67–68.

4. Sentencing Proceeding

On February 9, 2022, a Sentencing Hearing was held before Senior Judge Thomas J. McAvoy. The Court sentenced Halls to 180 months on each of Counts 1, 9, 19, and 21, to be served concurrently, 60 months on Count 22, to be served consecutively to all other counts, for a total term of 240 months; followed by supervised release for a total term of 5 years, consisting of 3 years on each of Counts 1, 9, 19, and 21, and 5 years on Count 22, all to be served concurrently. See Doc. 54. The Court also ordered to waive his fine and to pay a Mandatory Special Assessment Fee of $500. *Id.* An Amended Judgment was issued on March 3, 2022. See Doc. 58. A timely Notice of Appeal was filed on February 22, 2022. See Doc. 56.

5. Appellate Proceeding

On Appeal, Halls argued that (1) the district court erred in accepting his guilty plea because it did not comply with certain requirements under Federal Rule of Criminal Procedure 11, (2) the government breached the plea agreement, and (3) the district court erred in imposing two discretionary conditions of supervised release in the written judgment that it did not orally pronounce at sentencing. See Doc. 56.

On May 27, 2022, Halls filed *pro se* request to Dismiss Counsel of Record so that he may proceed with his appeal in this case. See Doc. 66. It was relayed to him by the clerks that he would need to file a *pro se* motion to have counsel of record dismissed from his case and or have his counsel file a motion to withdraw. *Id.* On

September 15, 2022, a Motion to Withdraw as Attorney was filed by Battisti, which was granted on September 19, 2022. See Docs. 67, 68.

On November 3, 2022, the Court assigned Michael P. Robotti ("Robotti") as Halls' appellate counsel. See ROA. 56.[2] On July 14, 2023, Robotti filed an *Anders* Brief in his appeal. Halls was not informed prior to the filing of said brief that his attorney was filing an *Anders* Brief. Robotti contemporaneously filed a Motion to Withdraw as appellate counsel. See ROA. 79.

On July 27, 2023, Halls filed a Motion to Extend for 90 Days Time to File a *Pro Se* Brief, which was granted on August 16, 2023 and accompanying Robotti's Motion to Withdraw as Counsel. See ROA. 91, 102.

On December 27, 2023, Halls filed a *Pro Se* Response in Opposition to the *Anders* Brief filed by Robotti. Additionally, on January 16, 2024, Halls filed a Letter informing the Court of his intention to file a *pro se* Supplemental Briefing. See ROA. 116, 118.

On July 26, 2024, the 2nd Circuit ordered that the Robotti's *Anders* Brief motion was denied. The Government's motion to dismiss was granted in part and the appeal was dismissed as to Halls' conviction (except regarding the validity of the plea

---

[2] "ROA." refers to the record on appeal in No. 22-360, which is immediately followed by the page number.

itself), the terms of imprisonment and supervised release, and the forfeiture order. See ROA 131. Eventually, Courtenay K. McKeon ("McKeon") was assigned to proceed with Halls on Appeal.

On October 1, 2025, the 2nd Circuit ordered that the portion of the District Court's Judgment regarding Halls' guilty plea was affirmed, and the matter is remanded to the District Court with instructions to vacate the portion of the Judgment imposing the Financial Records and Search Conditions. See ROA 195-1.

On March 4, 2026, Halls filed a petition for a writ of certiorari, which remains pending before the United States Supreme Court. See ROA 202.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See, *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise 'subject to collateral attack." 28 U.S.C § 2255 (1994). Despite this apparently broad language, violations of federal law are

only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974). Under Section 2255 of Title 28, United States Code, a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed. 28 U.S.C. § 2255(a). The statute further provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing § 2255 Proceedings further provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 281 U.S.C. foll. § 2255. The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding. The petitioner's motion sets forth his or her legal and factual claims, accompanied by relevant exhibits: *e.g.*, an affidavit from the petitioner or others asserting relevant facts within their personal knowledge and/or identifying other sources of relevant evidence. Compare Rules Governing § 2255 Proceedings, Rules 2, 4(b), with Fed.R.Civ.P. 56(a)-(c); see also,

*Blackledge v. Allison*, 431 U.S. 63, 80-83 (1977). The district court reviews those materials and relevant portions of the record in the underlying criminal proceeding. Compare rules governing § 2255 proceedings, Rules 4(b), 8(a) with Fed.R.Civ.P. 56 (c). The court then determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief. If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (requiring plaintiff present evidence from which a jury might return a favorable verdict in order to have survived summary judgment requirement that he provide "a genuine issue of fact" for trial). The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963). The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. See, *Strickland v. Washington,* 466 U. S. 668 (1984). As such, ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See, *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland*, supra. The Sixth Amendment also entitles a defendant to the assistance of counsel at every critical stage of a criminal prosecution. *Kirby v. Illinois,* 406 U.S. 682, 690 (1972).

Critical stages are those steps of a criminal proceeding that hold significant consequences for the accused. See *Bell v. Cone,* 535 U.S. 685, 695-96 (2002). Thus, a defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding. See, *Coleman v. Alabama,* 399 U.S. 1, 9 (1970). To prevail on an ineffective assistance of counsel claim, Diaz must show (1) "that his counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). The first *Strickland* requirement is commonly called the "performance" prong and the second is called the "prejudiced" prong. See *Strickland,* 466 U. S. at 687. Further, defendant must show that counsel's errors were prejudicial and deprived him of a "fair trial", or in other words, a trial whose result is reliable. *Id.* The familiar two-part test of *Strickland* referenced above has been applied by the Supreme Court and the Second Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance in all phases of the proceedings. *Id.*

Defendants can raise ineffective assistance claims concerning performance before trial and during plea negotiation [*Lafler v. Cooper*, 132 S. Ct. 136 (2012); *Kimmelman v. Morrison*, 477 U.S. 365, 385(1986); performance during trial

[*Strickland*, 466 U.S. at 686, 687; assistance during sentencing [*Strickland,* supra; *Glover v. United States,*531 U.S. 198 (2001); and performance on appeal [*Evitts v. Lucey,* 469 U. S. 387, 396 (1985)].

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. See also, *Andrews v. United States*, 373 U.S. 334, 339 (1963).

## V. **DISCUSSION**

As a preliminary matter, Halls respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *Tracy v. Freshwater*, 623 F.3d 90 (2nd Cir. 2010) (*Pro se* pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

### A. **Pretrial Counsel's Failure To: (1) Conduct An Adequate and Independent Pretrial Investigation; and (2) Attempt to Negotiate A Favorable Plea Agreement Deprived Halls of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.**

1. Failure to Conduct An Adequate and Independent Pretrial Investigation.

Defense counsel has a constitutional duty to conduct a "reasonably substantial, independent investigation" into both the facts of the case and applicable law to provide effective assistance. See *Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003). This duty is well established by the Supreme Court in *Strickland v. Washington*, which states:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

In this case, Battisti failed to conduct a reasonable and independent pretrial investigation, as required by constitutional standards. Counsel did not thoroughly research relevant case law, investigate key facts, or explore potential defenses. Specifically:

a. Failure to Investigate Drug Quantities:

Battisti did not challenge the government's assertions regarding the drug quantities attributed to Halls, despite wiretap evidence suggesting discrepancies in the alleged amounts. A reasonable investigation would have sought to verify or contest these quantities, which were critical to Halls' sentencing exposure under the United States Sentencing Guidelines. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (failure to investigate facts affecting sentencing is prejudicial).

b. Failure to Challenge the §924(c) "In Furtherance" Element:

Count 22 charged Halls with possession of firearms "in furtherance of a drug trafficking crime." See PSR ¶¶ 19-20. In fact, the PSR states that agents recovered: AR-15 rifle at **Ithaca apartment**, two pistols at *recording studio*, pistol hidden in **vehicle trap compartment**, and drugs found **separately in hotel room**. See PSR ¶¶ 16-17.

The PSR also states: "The defendant admitted to possessing the firearms to protect himself, his controlled substances, and proceeds." See PSR ¶ 20. However, the PSR never establishes the legally required nexus between the firearm and a specific drug trafficking offense. *United States v. Snow*, 462 F.3d 55 (2d Cir. 2006).

c. Failure to Examine Halls Role in the Offense:

Battisti neglected to investigate Halls actual role in this case and unsupported assertion that Halls acted as a leader or organizer in the offense. However, Halls was not charged with a conspiracy offense, and the record contains little evidence that he exercised decision-making authority, controlled other participants, or directed the actions of others in the manner required to support a leadership enhancement under the Sentencing Guidelines. *Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (counsel's failure to investigate defendant's role undermines effective assistance).

d. Failure to Challenge the Premises Claim:

Battisti did not contest the government's claim that Halls maintained premises for drug-related activities, despite the lack of direct evidence. A competent investigation would have included gathering independent evidence to rebut this allegation. In *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001) — the court held that counsel's failure to investigate key facts and challenge the prosecution's theory constituted constitutionally deficient performance.

e. Failure to Challenge the Threat of Violence Issue:

A two-level enhancement for an alleged threat of violence based primarily on statements attributed to a complaining witness whose credibility and reliability were never meaningfully challenged by Battisti. *United States v. Martinez*, 413 F.3d 239

(2d Cir. 2005), the court explained that factual findings at sentencing must be supported by reliable evidence.

f. Failure to Seek Independent Investigative Resources:

Battisti failed to file a motion requesting funds for a private investigator, as permitted under 18 U.S.C. § 3006A(e). The Second Circuit has emphasized the necessity of utilizing such resources when needed to challenge the government's case.

See *Hinton v. Alabama*, 571 U.S. 263 (2014) ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Instead, Battisti limited his investigation to reviewing the government's case file and engaging in discussions with the prosecutor, without conducting any independent inquiries to corroborate or challenge the government's evidence.

g. Prejudice to Halls:

Counsel's failure to conduct a meaningful investigation prejudiced Halls by depriving him of a viable defense and leaving the government's case uncontested. As the Supreme Court has made clear, "counsel's failure to investigate a potential defense strategy constitutes deficient performance where that failure is not based on reasonable professional judgment." *Wiggins v. Smith*, 539 U.S. at 534.

f. Had Battisti conducted a thorough investigation:

Evidence could have been uncovered to challenge the firearm and drug quantities attributed to Halls, potentially reducing his sentencing exposure under the Guidelines. Investigating Halls's role in this case could have undermined the prosecution's characterization of him as a leader, as well as, the threatened alleged victim, which significantly enhanced his sentence. Independent evidence might have disproven the allegation that Halls maintained premises for drug-related activities, further weakening the government's case. These failures resulted in Halls being unprepared to challenge the prosecution effectively, leaving him with no meaningful choice but to plead guilty under misinformed circumstances. The Supreme Court and Second Circuit both recognize that prejudice arises when counsel's failures undermine the reliability of the outcome. See *Strickland*, 466 U.S. at *694;Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001). \

In light of the above, Battisti's failure to conduct an adequate and independent pretrial investigation constituted ineffective assistance of counsel under *Strickland*. This deficiency deprived Halls of the ability to make informed decisions about his defense and undermined the fairness of the proceedings. Therefore, Halls' conviction and sentence should be vacated, and he should be granted relief to ensure his constitutional rights are preserved.

2. Failure to Attempt to Negotiate a Favorable Plea Agreement

A guilty plea is constitutionally valid only if it represents a knowing, voluntary, and intelligent choice among the alternatives available to the defendant. The Supreme Court established in *Boykin v. Alabama*, 395 U.S. 238 (1969) that a guilty plea entered without a full understanding of its consequences violates due process. Similarly, in *North Carolina v. Alford*, (400 U.S. 25, 1970) the Court held that a plea must reflect a voluntary and intelligent choice based upon an understanding of the law and the facts.

When a defendant pleads guilty on the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. See *Hill v. Lockhart*, 474 U.S. 52 (1985).

In this case, Battisti failed to provide Halls with accurate and competent advice regarding the consequences of entering the plea agreement. The Plea Agreement required Halls to stipulate to facts and sentencing elements that significantly increased his sentencing exposure, including drug quantities and firearm-related conduct. However, Battisti failed to fully explain how these stipulations would affect the sentencing guidelines.

Had Battisti been a competent counsel, he would have carefully explained to Halls how the stipulated drug quantity would determine the base offense level under the United States Sentencing Guidelines and how additional enhancements could further increase the guideline range. Instead, Halls entered the plea without a full appreciation of the substantial sentencing consequences.

The Second Circuit has emphasized that defense counsel has a duty to provide meaningful advice during plea negotiations. In *Purdy v. United States*, 208 F.3d 41 (2d Cir. 2001), the court explained that counsel must ensure that the defendant understands the law in relation to the facts so that the defendant can make an informed decision regarding whether to plead guilty or proceed to trial.

Likewise, the Second Circuit held in *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998); amended 2000, that defense counsel provides ineffective assistance when he grossly misrepresents the defendant's sentencing exposure. The court noted that accurate advice concerning sentencing consequences is essential because the defendant's decision to plead guilty often turns on the expected sentence.

Here, Battisti failed to ensure that Halls understood the true sentencing implications of the plea agreement. Battisti would have explained that the stipulated conduct, combined with the guideline enhancements and the mandatory consecutive sentence under 18 U.S.C. §924(c), could result in a sentence approaching or

exceeding two decades of imprisonment. Armed with that information, Halls may have chosen to pursue trial, negotiate a different plea agreement, or challenge the underlying sentencing assumptions.

Furthermore, the PSR ultimately calculated Halls' guideline range based upon a base offense level driven by the stipulated drug quantity and additional enhancements. After these calculations, Halls faced a guideline range of 168 to 210 months, followed by a mandatory consecutive 60-month sentence for the firearm count, resulting in a combined guideline range of 228 to 270 months.

Battisti's duty was to evaluate these potential sentencing consequences and explain them to Halls before he agreed to plead guilty. Courts have repeatedly recognized that serious misadvice concerning sentencing exposure can render a guilty plea constitutionally defective.

The Second Circuit in *Gordon* held that a grossly inaccurate estimate of sentencing exposure can amount to ineffective assistance when it influences a defendant's decision to plead guilty. Similarly, other federal courts have recognized that counsel breaches his duty when he fails to properly advise a defendant about the likely sentencing consequences of a plea. See *United States v. Ridgeway*.

Here, Battisti would have conducted a thorough guideline analysis prior to the plea and explained the likely sentencing range. Also, Battisti should also have warned

Halls that additional enhancements—such as role adjustments and premises enhancements—could increase the sentence further. Instead, he permitted Halls to accept a Plea Agreement without ensuring that he understood the substantial sentencing risks involved.

Because Halls' plea decision was made without accurate legal advice, the plea cannot be considered fully informed or voluntary.

**B. Sentencing Counsel's Failure To: (1) Correctly Discuss and Explain the PSR with Halls Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; and (3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable Deprived Halls of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.**

Counsel's duties at sentencing include ensuring that the defendant fully understands the contents and implications of the PSR, raising substantive objections to incorrect or unsupported enhancements, and advocating for mitigation to secure a fair and just sentence. See *Strickland*, 466 U.S. at 688. Sentencing counsel's failure to fulfill these obligations renders their performance deficient and prejudicial, violating the defendant's Sixth Amendment rights.

Halls' sentencing counsel, Battistit, failed to review or explain the PSR's findings with Halls, leaving him unable to understand the sentencing calculations or challenge its inaccuracies. This failure deprived Halls of his right to make informed

decisions and undermined his ability to meaningfully participate in his defense. The Second Circuit has consistently held that effective representation requires counsel to review the PSR with the defendant and explain its potential impact. See *United States v. Cortez*, 841 F.2d 456 (2d Cir. 1988) (failure to explain PSR prejudices the defendant by denying an opportunity to address inaccuracies).

Furthermore, Battisti's ineffective assistance continued as the PSR applied several guideline enhancements that significantly increased Halls' offense level, including enhancements for a credible threat of violence, maintaining a drug premises, and a leadership or supervisory role. These enhancements increased the total offense level and substantially elevated the sentencing range.

Battisti had an obligation to carefully review the PSR and challenge any enhancements that lacked adequate factual support. Sentencing advocacy is a critical component of effective representation, particularly in federal cases where guideline calculations often determine the ultimate sentence. Specifically:

- Failure to Challenge the §924(c) "In Furtherance" Firearm Element. One of the most consequential failures of counsel was the failure to challenge the sufficiency of evidence supporting the §924(c) charge. Section 924(c) requires proof that a firearm was possessed "in furtherance of" a drug trafficking offense; mere possession or proximity is insufficient. The PSR reflects that firearms were recovered in locations physically separate from the alleged drug activity: an AR-15 at Halls's Ithaca apartment, two pistols at a recording studio, and a pistol hidden in a vehicle

compartment. Drugs were discovered in a hotel room and other locations not directly associated with the firearms. The record establishes no clear nexus between the firearms and the drug trafficking activities, a critical element under Second Circuit precedent. In *United States v. Finley*, 245 F.3d 199 (2d Cir. 2001), the court emphasized that the firearm must advance or promote the drug trafficking offense. *United States v. Snow*, 462 F.3d 55 (2d Cir. 2006), identified factors including accessibility, proximity to drugs, whether loaded, and circumstances of discovery. Other circuits, including the Ninth Circuit in *United States v. Mann*, 389 F.3d 869 (9th Cir. 2004), have vacated convictions where the government relied solely on proximity.

Competent counsel would have: moved to dismiss the §924(c) charge for lack of evidence; challenged the government's proof of nexus; clarified that mere possession does not satisfy §924(c); and argued that the physical separation of firearms and drugs negated any "in furtherance" claim.
By failing to litigate these issues, Battisti allowed the government to obtain a §924(c) conviction carrying a mandatory consecutive sentence of 60 months, constituting substantial prejudice.

- <u>Ineffective Assistance in Permitting the 1,000-Kilogram Drug Equivalency Stipulation</u>. Battisti also rendered ineffective assistance by allowing Halls to stipulate to a 1,000–3,000 kilogram converted drug weight, which dramatically inflated the base offense level and total guideline range. The PSR confirms that the controlled purchases and seized substances attributed to Halls were extremely small, totaling only grams to ounces of cocaine base, heroin, and fentanyl. For example, the record shows controlled purchases of approximately one gram per transaction over several months, and a single seizure of one ounce of fentanyl at the Econo Lodge hotel room. These quantities are not remotely close to the 1,000 kilograms used to determine the base offense level of 30.

- By failing to challenge the reliability of these amounts, or to require the government to prove the quantity through credible evidence, counsel allowed the court to rely on grossly inflated estimates. Under Second Circuit precedent, including *United States v. Shonubi*, 998 F.2d 84 (2d Cir. 1993), and *United States v. Martinez*, 987 F.2d 920 (2d Cir. 1993), drug quantity must be based on specific and reliable evidence, not speculative calculations or untested confidential source information.

  Because the stipulation substantially increased the guideline range, there is a reasonable probability that, absent Battisti's error, Halls would have received a significantly lower sentence.

- <u>Failure to Challenge Related Sentencing Enhancements Applied</u>. First, the threat-of-violence enhancement was premised on statements attributed to a cooperating witness whose credibility and reliability were never tested. The allegation was accepted without evidentiary testing, corroboration, or cross-examination. Moreover, the complainant failed to demonstrate how Halls' alleged conduct caused any concrete or particularized harm to him personally, and the record does not clearly establish that any actual threat was directed at the witness in a manner sufficient to justify the enhancement. Despite these deficiencies, Battisti failed to request an evidentiary hearing, demand supporting evidence, or challenge the reliability of the allegation. Under the standards set forth in *Strickland v. Washington*, competent counsel would have contested the factual basis for the enhancement and required the government to establish the alleged threat through reliable evidence. By failing to litigate the issue, counsel allowed the court to rely on untested allegations that increased Halls' offense level and advisory guideline range.

  Second, the PSR applied a two-level leadership-role enhancement based on the unsupported assertion that Halls acted as a leader or organizer in the offense. The enhancement appeared to rely largely on generalized allegations rather than concrete proof that Halls organized or supervised other individuals. Battisti could

> have argued that the alleged conduct, at most, reflected independent or parallel activity rather than the managerial authority necessary to qualify as a leadership role. By failing to meaningfully challenge the factual basis for this enhancement or argue that the absence of a conspiracy charge undermined the government's theory of leadership, counsel allowed the court to apply an increase in offense level that was not supported by sufficient evidence.
>
> Third, the premises enhancement required proof that the location was maintained primarily for drug distribution purposes. Counsel failed to challenge whether the government could establish that drug activity was a primary or principal use of the premises rather than incidental conduct.
>
> Courts in the Second Circuit have repeatedly recognized that unchallenged guideline enhancements can constitute ineffective assistance where counsel fails to contest unsupported factual assertions that increase the guideline range. See, e.g., *United States v. Archer* and *United States v. Broxmeyer*.
>
> Because these enhancements collectively increased Halls' total offense level and advisory sentencing range, Battisti's failure to properly challenge the factual and legal basis for them prejudiced the defense. Had counsel litigated these issues through objections, evidentiary challenges, or a sentencing hearing, there is a reasonable probability that one or more of the enhancements would not have been applied, resulting in a significantly lower guideline range and sentence.

Competent counsel could have objected to these enhancements and required the government to prove them by a preponderance of the evidence. Battisti also could have sought a downward variance under the sentencing factors set forth in 18 U.S.C. §3553(a), emphasizing mitigating circumstances and arguing that the guideline range

overstated the seriousness of the conduct.

The Supreme Court has emphasized that the Sixth Amendment right to counsel extends fully to sentencing proceedings. Under *Strickland v. Washington*, failure to investigate or challenge sentencing factors can constitute ineffective assistance when those failures affect the length of the sentence.

C. **<u>Appellate Counsel's Failure to Conduct an Independent Review or Advocate on the Merits, Instead Simply Filing an *Anders* Brief Claiming No Non-Frivolous Issues.</u>**

It is also important to highlight that, after Halls filed his Notice of Appeal on February 22, 2022, he requested the dismissal of his retained counsel, Battisti, so that he could proceed *pro se* on appeal. See [95]. Subsequently, Battisti moved to withdraw, and the court granted the motion. Appellate counsel Robotti was then assigned to Halls' appeal. Robotti filed an *Anders* brief asserting that there were no non-frivolous issues to raise; however, the 2nd Circuit did not approve or grant the *Anders* brief, highlighting that Robotti failed to adequately perform his duties as appellate counsel. This sequence demonstrates that Halls was effectively denied competent appellate representation, as his appointed counsel neither properly evaluated the record nor ensured that meritorious issues. See *Penson v. Ohio*, 488 U.S. 75 (1988), which recognizes that an *Anders* brief may only be appropriate if the record truly contains no arguable issues of merit. Here, however, the record was

replete with meritorious issues that should have been raised on appeal, and Robotti's failure to do so deprived Halls of meaningful appellate review.

Specifically, several strong issues were available for appeal, including:

1. Questionable Drug Quantity Attribution – The PSR and Plea Agreement attributed a 1,000–3,000 kilogram converted drug weight to Halls, yet the controlled purchases and seized substances were limited to grams to ounces, far below the base offense level used to calculate his sentencing range. Battisti failed to challenge this gross overstatement or the lack of reliable evidence supporting it.
2. Weak §924(c) Nexus – Multiple firearms were recovered in locations physically separate from the drug seizures (e.g., the AR-15 in Ithaca, two pistols at a recording studio, and a hidden pistol in a vehicle), and there was no clear evidence linking Halls' possession of the firearms to the drug trafficking offense. Battisti failed to raise the argument that the §924(c) conviction lacked the necessary "in furtherance" nexus, which has been recognized by the Second Circuit as a frequent basis for reversal.
3. Contested Sentencing Enhancements – The PSR applied enhancements for threat of violence, leadership role, and maintaining drug premises, some of which were unsupported or unreliable. Battisti did not challenge the court's application of these enhancements, even though competent counsel could have argued that the lack of corroborated evidence and Halls' absence of a conspiracy charge undermined the leadership enhancement under USSG §3B1.1.

By failing to raise these meritorious issues, Robotti's reliance on an *Anders* brief falls short of the Sixth Amendment standard for effective assistance. The Second Circuit has repeatedly held that filing an *Anders* brief is improper where non-frivolous issues exist, because it prevents a meaningful appellate review of potentially reversible errors. See *Penson v. Ohio*, 488 U.S. at 80.

In this case, Robotti's failure allowed: the §924(c) conviction to remain unchallenged; the sentencing range to remain inflated due to untested drug quantities; and unwarranted PSR enhancements to be applied without review.

These deficiencies constitute ineffective assistance of Robotti, and there is a reasonable probability that had counsel raised these issues, the outcome of the appeal would have been different.

Accordingly, Halls' sentence should be vacated for resentencing.

## VI. CONCLUSION

In light of the foregoing, it is evident that Halls was deprived of his constitutional right to effective assistance of counsel at both the plea-bargaining and sentencing phases of his case. Counsel's failure to adequately inform Halls of the implications of his plea, properly object to inaccuracies in the PSR, and advocate for a fair and just sentence constitute deficient performance under the standards established by *Strickland*, and its progeny. These errors prejudiced Halls, resulting in a significantly harsher sentence than he otherwise would have received had counsel performed competently.

The U. S. Supreme Court has consistently held that a defendant is entitled to effective legal representation at every critical stage of a criminal proceeding, including plea negotiations and sentencing. See *Lafler v. Cooper*, 566 U.S. 156

(2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Here, the failures of Halls's counsel not only undermined the fairness of the proceedings but also led to a fundamentally unjust outcome.

Had Halls been properly informed, represented, and advocated for, there is a reasonable probability that he would have either proceeded to trial or received a substantially lower sentence at sentencing. These failures deprived him of his rights under the Sixth Amendment, warranting the vacatur of his conviction and sentence.

For these reasons, Halls respectfully requests that the Court grant his amended § 2255 motion, vacate his conviction and sentence, and order appropriate relief, including but not limited to resentencing or an evidentiary hearing to fully assess counsel's deficiencies, resolve facts in dispute between the parties and their prejudicial impact on his case, and to expand an incomplete record.

Respectfully submitted,

Dated: April 29, 2026

Shameek Halls

SHAMEEK J. HALLS
REG. NO. 26515-052
FCI [redacted] Ray Brook
FEDERAL CORR. INSTITUTION
P.O. BOX [redacted] 900 Ray Brook NY 12977
[redacted], [redacted] [redacted]
Appearing *Pro Se*

Shameek Halls
#265-15052
F.C.I RayBrook
P.O Box 900
RayBrook NY 12977

U.S. DISTRICT COURT
JOHN M. DOMURAD, CLERK
MAY 0 6 2026
RECEIVED

MAY - 1 2026
USPS

Mr. John M. Domurad
Clerk of Court U.S. District Court
Northern District of New York
Syracuse Division P.O Box 7367
Syracuse, NY 13261