IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************
UNITED STATES OF AMERICA, Case No. 3:20-CR-00077 (GTS)

v.

SHAMEEK HALLS,

Defendant.
********************************

**GOVERNMENT'S OPPOSITION TO MOTION TO REDUCE SENTENCE PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Northern District of New York, hereby responds in opposition to the motion filed by petitioner Shameek Halls under 28 U.S.C. § 2255 (Dkt. No. 93). For the reasons explained below, the motion should be denied.

**FACTUAL BACKGROUND**

On November 11, 2019, a criminal complaint was filed as to Shameek Halls in the Northern District of New York charging the defendant with distribution and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (Dkt. No. 1.) Initially, the defendant was represented by the office of the Federal Public Defender (Dkt. No. 2). On or about November 19, 2019, F. Paul Battisti, was retained by the defendant, filed his notice of appearance and waived the timeframe of the detention and preliminary hearing. (*See* Dkt. Nos. 3-5.) The defendant was indicted on a 22 count indictment on March 2, 2020 which included twenty counts of distribution and possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c), one count of possession with intent

to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c) and one count of possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). (Dkt. No. 10.) On April 28, 2020, a detention hearing was held; the defendant was detained. (4/28/20 Text Minute Entry.)

On July 7, 2021, the defendant pled guilty via plea agreement to five of twenty-two counts of the indictment including three counts of distribution and possession with intent to distribute controlled substances, one count of possession with intent to distribute controlled substances and one count of possession of firearms in furtherance of a drug trafficking crime. (Dkt. No. 33.) As part of the plea agreement, the parties stipulated, in relevant part, that: a) the defendant was personally accountable for at least 1000 kilograms but less than 3000 kilograms of converted drug weight and b) that the defendant maintained a premises for the purpose of distributing a controlled substance. (Dkt. No. 33 p. 8.)

In January of 2022, both the government and Halls, through his counsel, F. Paul Battisti, filed sentencing memorandums on this case. (Dkt Nos. 45-46.) In his sentencing memorandum, in relevant part, Attorney Battisti argued against two sentencing enhancements: a) an enhancement under U.S.S.G. § 2D1.1(b)(2), that the defendant made a credible threat to use violence when he pointed the gun at the head of an occupant of the residence and b) a two-level role enhancement applied for the defendant serving as an organizer, leader, manager or supervisor under § 3B1.1(c). (Dkt. No. 46.) On February 9, 2022, the defendant was sentenced to 180 months on Counts 1, 9, 19 and 21 to run concurrently with each other and 60 months on Count 22 to run consecutively to the previous counts, for a total of 240 months. (Dkt. Nos. 54 and 58.) The defendant was also sentenced to supervised release, forfeiture and a special assessment. (Dkt. Nos. 54 and 58.) During the sentencing proceeding, Attorney Battisti again raised objections to the role enhancement and

the threat of violence. (Dkt. No. 63 p. 3, ln. 2-10.)

On February 22, 2022, Attorney Battisti timely filed a notice of appeal for Halls. (Dkt. No. 56.) On May 27, 2022, the defendant filed a letter requesting to dismiss Attorney Battisti as counsel of record. (Dkt. No. 66.) Attorney Battisti also filed his own motion to withdraw in September 2022; that motion was granted by the Court (Dkt. No. 67 and 9/19/22 Text Order.) On November 3, 2022, Attorney Michael Robotti was assigned as appellate counsel for the defendant. (Case 22-360, Dkt. 56-1, hereinafter Appellate Docket or "App. Dkt.") On July 14, 2023, Attorney Robotti filed an *Anders* Brief and motion to be relieved as counsel; the government also moved to dismiss the appeal as barred by the waiver of appellate rights and for summary affirmance of the rest of the defendant's judgment. (*See* App. Dkt. Nos. 76, 79 and 131) On or about November 21, 2023, the defendant, pro se, filed a motion for reduction of sentence; that motion was subsequently denied. (Dkt. Nos. 72 and 75.) On July 26, 2024, the Second Circuit denied in part and granted in part the requests of Attorney Robotti and the government related to the *Anders* Brief, dismissal of appeal and summary affirmance of the judgment. (App. Dkt. No. 131.) That is, the Second Circuit identified a possible non-frivolous appellate issue related to two standard supervised release conditions of Halls and, therefore, denied the *Anders* motion and Attorney Robotti's motion to be relieved as counsel. (App. Dkt. No. 131 p. 1-2.) The Court also directed Attorney Robotti to consult with the defendant about plea withdrawal arguments and determine whether to include in his briefing, if non-frivolous were present. (App. Dkt. 131 p. 2-3.) Additionally, the Court granted the government's motion in part by dismissing the appeal as to the defendant's conviction (except regarding the validity of the plea itself), the terms of imprisonment, release and the forfeiture order. (App. Dkt. No. 131 p. 1.)

Attorney Robotti subsequently filed an appellate brief for the defendant on October 25,

2024 arguing that the defendant's plea was invalid and challenging two supervised release conditions. (App. Dkt. No. 136). The government responded in opposition on January 22, 2025 with the defendant filing a reply on February 12, 2025 (App. Dkt Nos. 159, 172.) On October 1, 2025, the Second Circuit filed a summary order affirming the District Court's judgment regarding the defendant's guilty plea and vacating the judgment regarding the imposition of two special conditions and remanding for the limited purpose of addressing those conditions. (App. Dkt. 195-1.) On February 13, 2026, this Court resentenced defendant Halls to the same sentence previously imposed including notifying, imposing and justifying the two supervised release conditions. (2/17/20 Text Entry.)

Halls filed the current motion on May 6, 2026 (Dkt. No. 93, hereinafter "Motion"). He argues generally that he received ineffective assistance from both his counsel in the District Court, F. Paul Battisti, and his appellate counsel, Michael Robotti. Halls' arguments are addressed in more detail below.

## LEGAL BACKGROUND

Under 28 U.S.C. § 2255, a petitioner may move to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to attack." 28 U.S.C. § 2255(a). The petitioner "bears the burden of establishing by a preponderance of the evidence that he is entitled to relief." *United States v. Gallo-Lopoz*, 931 F. Supp. 146, 148 (N.D.N.Y. 1996) (McAvoy, J.) (citations omitted).

To establish ineffective assistance of counsel, a petitioner on a § 2255 petition must establish (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that counsel's unprofessional errors actually prejudiced the defense. *Strickland*, 466 U.S.

at 688 (1984). Specifically, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* at 689. The ultimate goal of the inquiry is not to second-guess decisions made by defense counsel; rather, it is to ensure that the judicial proceeding is still worthy of confidence despite any potential imperfections. *See Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000).

A petitioner who seeks to overturn a conviction based upon ineffective assistance of counsel "bears a heavy burden." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). As the Second Circuit has explained, "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Linstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 696-97 (internal citations omitted)).

There are gatekeeping provisions to § 2255 to reduce frivolous and/or repeated attacks on criminal convictions, and for good reason; the provisions are designed to reduce the burden that such challenges place on the courts. *See United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) ("The reasons for narrowly limiting the relief permitted under § 2255 – a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place – are 'well known and basic to our adversary system of justice.'" (quoting *United States v. Addonizio*, 442 U.S. 178, 184 & n.11 (1979)). The Court in *United States v. Frady*, 456 U.S. 152 (1982), recognized that "to obtain collateral relief a

prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Id.* at 166. The rationale for this rule is clear:

> Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post-conviction collateral attacks. To the contrary, a final judgment commands respect.

*Frady*, 456 U.S. at 164-65.

The Second Circuit has found that the Court must make a factual inquiry into the claims made by the defendant, but, an in person evidentiary hearing with testimony is not required. To be clear, this Court is authorized under § 2255(b) to hold an evidentiary hearing as necessary to assist in making findings of fact, but, such a hearing is warranted only where "the application … contain[s] assertions of fact that a respondent is in a position to establish by competent evidence…. Airy generalities, conclusory assertions and hearsay statements will not suffice." *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) (ellipses in original) (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)). In determining whether a hearing is necessary, "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) (citing cases).

In a case involving disputed factual issues, a court need not hold an evidentiary hearing involving live testimony as "[i]t may instead be perfectly appropriate, depending upon the nature of the allegations, for the district court to proceed by requiring that the record be expanded to include letters, documentary evidence, and, in an appropriate case, even affidavits" if the district court "reasonably decide[s] that . . . [live testimony] would add little or nothing to the written submissions." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). This "intermediate step —

between deciding the motion without the benefit of any supplemental materials and a full hearing with live witnesses — 'avoid[s] the delay, the needless expenditure of judicial resources, [and] the burden on trial counsel and the government.'" *Puglisi*, 586 F.3d at 215 (quoting *Chang*, 250 F.3d at 86).

## ARGUMENT

Halls has not shown that his counsels' performance was deficient as to the issues he raises in his 2255 Motion, nor has he shown prejudice. Therefore, this motion should be denied. The general arguments the defendant has raised regarding both counsel are discussed below.

### A. Attorney Battisti's Alleged Failure to Conduct an Adequate and Independent Pretrial Investigation and Negotiate a Favorable Plea Agreement

The defendant alleges that Attorney Battisti failed to hire an investigator and failed to investigate several "key facts" including drug quantities attributable to him, the "in furtherance" element of 18 U.S.C. 924(c), his leadership role, the premises enhancement and an enhancement for a threat of violence. (Dkt. 93 p. 26- 32.) As part of this argument, the defendant argues that Attorney Battisti failed to seek independent investigative resources by failing to hire a "private investigator." (Dkt. 93 p. 30.)

The defendant's contentions are contradicted both by Attorney Battisti's declaration (herein Exhibit 1) and plea colloquy. Specifically, Attorney Battisti detailed in Exhibit 1 that, contrary to the defendant's assertion, he employed investigators working on Mr. Halls case to conduct independent investigations into a variety of issues and that Mr. Halls was aware of this. (Exh. 1 ¶ 8.) This was verified by the defendant's plea, where Attorney Battisti detailed at the time of the defendant's plea that his office had spent between 30-50 hours on Halls case and had "conducted an independent investigation, spoke to various witnesses, other individuals, homeowners, individuals that owned properties where Mr. Halls went." (Dkt. 65 p. 21 ln. 10-14.)

Attorney Battisti further detailed that as result of his investigation, he and members of his firm had "done our due diligence, consistent with our obligation under law in this case." (Id. at p. 21 ln. 14-15.) Further, in his declaration, Attorney Battisti detailed how he investigated drug quantities, the "in furtherance" element of 18 U.S.C. 924(c), Halls' leadership role, the premises enhancement and an enhancement for a threat of violence. (Exh. 1 ¶ 10-11, 13-15.)

The defendant also argues that Attorney Battisti failed to "[n]egotiate a [f]avorable [p]lea [a]greement." (Dkt. 93 p. 32.) In his argument, Halls elaborates that he is asserting that Attorney Battisti "failed to provide [him] with accurate and competent advice regarding the consequences of entering the plea agreement…[and] failed to fully explain how these stipulations would affect the sentencing guidelines." (Dkt. 93 p. 32.) Like the above argument, this argument, too, is directly contradicted by Attorney Battisti's declaration, the plea colloquy and, also, the plea agreement. Specifically, Attorney Battisti details in his declaration that he explained the impact of the stipulated enhancements in the plea agreement (drug weight and premises), the strategic decisions made to accept the stipulated enhancements, how other enhancements might apply and the impact of the mandatory consecutive sentence of 18 U.S.C. § 924(c). (Exh 1. ¶¶ 10-15.) Attorney Battisti further detailed how Mr. Halls expressed understanding of these issues, concurred in his defense strategies and wished to accept the plea agreement and its provisions. (Exh. 1 ¶¶ 10- 15.) Notably, strategic decisions by counsel are granted deference. *See Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984) ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"); *United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987) (rejecting ineffective assistance claim

based on counsel's failure to move for severance from co-defendants and explaining that court "will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed").

Attorney Battisti further explained how he went through the plea agreement in detail and explained the provisions, guidelines and penalties to the defendant. (Exh. 1 ¶ 16.) The plea agreement and colloquy support Attorney Battisti's assertions. Particularly, the plea agreement clearly details the penalties, the defendant's admissions and stipulations, including his stipulations to the drug weight and maintaining a premises for purposes of distributing controlled substances. (*See* Dkt. 33.) The defendant's plea colloquy likewise illustrates the defendant's knowledge and consequences of the plea agreement. Specifically Halls admits during his plea colloquy that Attorney Battisti explained the charges (and that he understood them), explained the consequences of pleading guilty (and that he understood those consequences) and that Attorney Battisti talked to him about his chances of winning or losing and "trial strategy and defenses" (and that he likewise understood those). (Dkt. 65 p. 4, ln. 9-15, p. 6 ln. 13-23, p. 10 ln. 21-25.) Further, the defendant acknowledged the facts of the case, including, in relevant part to the defendant's 924(c) claim, that he possessed an AR-15 and two additional firearms in furtherance of his drug trafficking—including to "protect himself from rival drug dealers or others who might steal the controlled substances and/or the money the defendant made from selling controlled substances." (Dkt. 65 p. 14, ln. 6-11, 21-25, p. 15, ln. 1-2). Specifically, when the Court asked the defendant whether he heard and understood what the government advised about his conduct and whether that was what he did, the defendant advised "yes" to both questions. (Dkt. 65 p. 15, ln. 16-21.) Finally, the Court also inquired with the defendant whether he had signed his plea agreement, had talked it over with

Attorney Battisti, whether Attorney Battisti explained it and whether he understood it when he signed it; the defendant gave an affirmative answer to each question. (Dkt. 65 p. 18, ln. 5-18.)

In summary, when reviewing the defendant's admissions in the plea agreement and acknowledgements on the record of his conduct, his arguments lack legitimacy and should fail. *See United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997) ("The self-inculpatory statements [the defendant] made under oath at his plea allocution "carry a strong presumption of verity," and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant " (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))); *see also Davis*, 2015 WL at 1277011, at *14 (the defendant's "sworn statements at the plea colloquy flatly contradict, and thus preclude, the simple and conclusory allegation that he pled because his attorney instructed him to do so rather than of his own voluntary choice").

**B. Attorney Battisti's Alleged Failure to Discuss and Explain the PSR, File Objections and Argue Mitigation of Punishment**

Defendant Halls also complains that Attorney Battisti was ineffective for failing "to review or explain the PSR's findings with Halls, leaving him unable to understand… and meaningfully participate in his defense." (Dkt. 93 p. 22-23.) The defendant also asserts that Attorney Battisti failed to challenge various enhancements and did not argue sufficiently for mitigation of punishment. (Dkt. 93 p. 22-26.). Like the above arguments, these arguments are also unsupported. Attorney Battisti's declaration details how he reviewed the PSR with the defendant, explained the findings, answered Halls' questions, discussed strategies to address the objections and discussed alleged inaccuracies in the PSR. (Exh. 1 ¶ 16) Further, Attorney Battisti detailed that he made objections as directed by he and Halls' discussions and strategy and did not decline to make any objections. (Id.) Attorney Battisti specifically detailed that Mr. Halls had agreed to the stipulated

drug weight, premises enhancement and the plea to 18 U.S.C. § 924(c) as strategic decisions in the case; therefore, he did not object/contest those issues at sentencing as that would have been contrary to their strategy regarding the plea agreement. (Exh. 1 ¶¶ 10-12, 14). Attorney Battisti further explained that he contested the role enhancement and threat of violence enhancements, as requested by his client. (Exh. 1 ¶¶ 13, 15.) This is confirmed by Attorney Battisti's sentencing memorandum and the sentencing transcript. (Dkt. No. 46 p. 5, Dkt. No. 63 p. 3, ln. 2-11.)

Attorney Battisti also detailed that, contrary to the defendant's representation, he argued for a sentence well below the guidelines based on the objections raised, characteristics of the defendant and background of the offense. (Exh. 1, ¶ 16.) It unclear what else Attorney Battisti could have done with respect to sentencing to address the complaints of the defendant.

### C. Attorney Robotti's Alleged Failure to Conduct an Independent Review or Advocate on the Merits

The defendant also argues that Attorney Robotti, his appellate counsel, was ineffective. His argument appears to be focused on Robotti's filing of an *Anders* Brief and that he (the defendant) asserts he was prejudiced by this filing because "several strong arguments were available for appeal" including arguments pertaining to drug quantity, "§ 924(c) Nexus" and contested sentencing enhancements. (Dkt. 93 p. 40- 41.) However, this argument it fails to acknowledge that Attorney Robotti did not merely file an *Anders* Brief; rather, upon the Second Circuit's denial of the *Anders* motion, Attorney Robotti filed a full appeal on behalf of the defendant with all topics he was able to pursue that were not blocked by the waiver of appeal ("the Government's motion to dismiss is GRANTED in part and the appeal is dismissed as to the Appellant's conviction (except regarding the validity of the plea itself), the terms of imprisonment

and supervised release and the forfeiture order.") (App. Dkt. 131 p. 1.). *See generally, United States v. Gomez-Perez,* 215 F.3d 315 (2d. Cir. 2000).

Therefore, as to Attorney Robotti, the record is clear that he exhausted all options on behalf of the defendant and the defendant's arguments against him should fail.

**CONCLUSION**

Halls' self-serving and vague claims are at odds with the record and do not entitle him to the relief he seeks. In this case, the parties' written submissions on the motion provide an adequate basis for the Court to reject the defendant's assertions and, because the "record in the underlying proceeding," conclusively undermines the defendant's claims, there is no need for an evidentiary hearing. *Puglisi*, 586 F.3d at 214 (citing cases).

For the foregoing reasons, Halls' motion pursuant to 28 U.S.C. § 2255 should be denied.

Dated: August 17, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

JOHN A. SARCONE III
First Assistant United States Attorney

*/s/ Kristen Grabowski*
By: Kristen Grabowski
Assistant U.S. Attorney
Bar Roll No. 700658